**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| VIDEOSHARE, LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>YOUTUBE, LLC,<br><br>        Defendant. | Case No. 1:12-cv-12012-MLW<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF YOUTUBE, LLC'S MOTION
FOR LEAVE TO AMEND ITS COUNTERCLAIMS
<u>AND JOIN GOOGLE INC. AS A COUNTERCLAIM-PLAINTIFF</u>**

## I.      INTRODUCTION

Plaintiff VideoShare, LLC ("Plaintiff")'s unequivocal forum shopping with respect to this controversy should not be tolerated.  Plaintiff selected this forum to initiate a patent infringement case against YouTube, LLC ("YouTube").

Plaintiff alleges that YouTube's products and services infringe one of its patents directed to video streaming technology (U.S. Patent No. 7,987,492 ("the '492 patent"). Without explanation, Plaintiff sought YouTube's consent to voluntarily dismiss this case. Plaintiff then filed a separate patent infringement case against YouTube and its parent corporation, Google Inc. ("Google"), about four weeks ago in the United States Court for the District of Delaware.  In that case, Plaintiff alleges that the same YouTube products and services infringe two similar patents also directed to video streaming technology (U.S. Patent Nos. 8,438,608 ("the '608 patent") and 8,464,302 ("the '302 patent")).

As such, an actual controversy exists as to whether any valid and enforceable claim of Plaintiff's related patents directed to video streaming technology cover YouTube's products and services.   However, Plaintiff seeks to dismiss this case in favor of the Delaware case.[1] (Dkt. Nos. 38-39).   YouTube believes that the parties should continue to resolve this dispute in the forum that Plaintiff initially selected.  Accordingly, YouTube respectfully requests leave to amend its declaratory judgment counterclaims to include the two patents asserted in Delaware.[2] In addition, YouTube also requests leave to join Google as a Counterclaim-Plaintiff. Plaintiff opposes this motion.

---

[1] YouTube will respond to Plaintiff's motion to dismiss in a separate filing.

[2] Specifically, YouTube's amendment seeks a declaratory judgment of non-infringement, invalidity, and unenforceability of the '608 and '302 patents.  A copy of YouTube's proposed First Amended Answer, Defenses, and Counterclaims is attached as Exhibit A.

1

## II.     BACKGROUND

The central controversy between the parties concerns a dispute over Google's YouTube products and services and Plaintiff's related patents directed to video streaming technology.

### A.     Procedural History

Plaintiff first sued YouTube in this Court, alleging that YouTube's products and services infringe the '492 patent directed to video streaming technology.  (Dkt. No. 1 ¶¶ 1, 7).  Shortly thereafter, YouTube responded by filing an answer, defenses, and counterclaims, including declaratory judgment counterclaims of non-infringement, invalidity, and unenforceability of the '492 patent.  (Dkt. No. 22).  Plaintiff replied by filing an answer denying YouTube's counterclaims.  (Dkt. No. 25).

Just last month, however, Plaintiff inexplicably sought YouTube's consent to dismiss this case.   (Ex. B, Email from R. Lyon to K. Johnson (May 22, 2013, 11:50 CDT)).  Before the parties were able to reach an agreement on dismissal, Plaintiff filed a separate patent infringement complaint against Google and YouTube in the District of Delaware.  (Ex. D, *VideoShare, LLC v. Google Inc. and YouTube, LLC*, No. 1:13-cv-00990-GMS, Dkt. No. 1 (D. Del. June 4, 2013) ("Del. Compl.")).  That case involves the same accused YouTube products and services and a nearly identical patent directed to video streaming technology.  (*Id.* at ¶¶ 1, 11).  Last week, Plaintiff amended its complaint against Google and YouTube in Delaware. (Ex. E, *VideoShare LLC v. Google Inc. et al.*, No. 1:13-cv-00990-GMS, Dkt. No. 7 (D. Del. June 26, 2013) ("Del. Am. Compl.")).  The amended complaint adds a third related patent directed to video streaming technology (the '302 patent) and accuses the same YouTube products

and services.  (*Id*. at ¶¶ 1, 11, 18).  Plaintiff has now involved two separate courts to resolve a singular controversy.[3]

Over the past month, Plaintiff continued to escalate its requests for voluntary dismissal of this case.  First, it offered to dismiss the case without prejudice.  (*See* Ex. B, Email from R. Lyon to K. Johnson (May 22, 2013, 11:50 CDT); Ex. C, Plaintiff's Draft Stipulation of Dismissal).  Then, it offered to dismiss the case "with prejudice."  (Ex. F, Email from R. Lyon to C. Carrano and K. Johnson (June 3, 2013, 14:23 EDT)).  Next, Plaintiff provided an unsolicited covenant not to sue to YouTube.  (Ex. G, Email from S. Franzini to C. Carrano (June 17, 2013, 19:41 EDT) ("[T]his e-mail confirms that VideoShare will no longer assert the '492 patent against YouTube now or at any point in the future.")).  Most recently, Plaintiff offered an "executed" covenant not to sue, stating that "VideoShare covenants not to sue YouTube for past or future infringement of the ['492] Patent," (Ex. H, Pl.'s "Executed Covenant Not to Sue"), and then moved to dismiss YouTube's counterclaims for lack of subject matter jurisdiction. (Dkt. Nos. 38-39).  The covenant is threadbare, however, and does not, for example, address the parties' controversy regarding the '608 and '302 patents, potential claims against Google or YouTube's customers, or the accused products and services at issue.

Plaintiff's Delaware case has expanded the controversy between the parties beyond the '492 patent and beyond just YouTube.  Therefore, YouTube has opposed Plaintiff's motion to dismiss in favor of amending its counterclaims in this Court so that this dispute can be resolved

---

[3] Google and YouTube have been forced to hire both local and national counsel to defend both matters.  *See VideoShare, LLC v. Google Inc. and YouTube, LLC*, No. 1:13-cv-00990-GMS, Dkt. (D. Del.) (listing counsel of record for Google and YouTube).

in the forum that Plaintiff originally selected.[4]

### B.      Plaintiff's Patents

Plaintiff's patents are directed to video streaming technology and are closely related to each other.   The '492 patent (the patent asserted in this case) is the parent patent of the '608 patent.   (*See* Ex. I, '492 patent).   The '608 patent is a nearly identical continuation patent that claims priority to the '492 patent.   (*See* Ex. J, '608 patent).   The '492 and '608 patents share the same title and both relate to systems and methods for sharing a streaming video over the Internet.   Both patents have identical inventors, identical specifications, and very similar claims.   Indeed, the claims of the two patents are so similar that, during prosecution, the United States Patent and Trademark Office ("PTO") rejected the '608 patent for obviousness-type double patenting.   (Ex. K, 11/27/2012 Office Action, at 2-3).   This rejection was issued because the '608 claims are not "patentably distinct" from the '492 claims. (*See id.*)   To overcome this rejection, Plaintiff submitted a terminal disclaimer, relinquishing the terminal part of the statutory term of the '608 patent, which would extend beyond the expiration date of the '492 patent.   (Ex. L, 2/27/13 Terminal Disclaimer).   The claims of the '608 patent were subsequently allowed without further comment from the examiner.   (Ex. M, 3/20/13 Notice of Allowance).

The issued claims of the '608 patent are remarkably similar to the '492 patent.   The '608 patent claim language generally tracks the claim language of the '492 patent, with the exception of a few claim limitations.   (*See, e.g.*, Ex. J, '608 patent at claim 1 (adding the "affinity group"

---

[4] YouTube believes that amending its counterclaims will not affect the schedule of this case, since no scheduling order has been entered in this case, no depositions have been noticed or taken, no claim construction has occurred, no experts have been disclosed, and the parties have not yet begun discovery.

limitation)).  The PTO issued the '608 patent on May 7, 2013 (*see id*.), about eight months after Plaintiff filed its complaint and about six months after YouTube filed its original answer, defenses, and counterclaims.  (*See* Dkt. No. 1; Dkt. No. 22).

The '302 patent is a close cousin of the '492 and '608 patents.  The '302 patent is directed to systems and methods for sharing a streaming video. (Ex. N, '302 patent). Although the '302 patent does not claim priority to the '492 or '608 patents, its disclosure and claims are closely related to those patents.  (*See id*.).  Several paragraphs and figures in the specification of the '302 patent are identical to that of the '492 and '608 patents.  (*See id*.) Like the '608 patent, the claims of the '302 patent were rejected by the PTO for obviousness-type double patenting over the '492 claims. (Ex. O, 3/21/13 Office Action, at 3-4). The '302 patent claims were also rejected for not being "patentably distinct" from the claims of the '608 patent.  (*Id*.)  To overcome this rejection, Plaintiff also submitted terminal disclaimers, relinquishing the terminal part of the statutory term of the '302 patent, which would extend beyond the expiration date of both the '492 and '608 patents.  (Ex. P, 4/11/13 Terminal Disclaimer).  The claims of the '608 patent were subsequently allowed without further comment from the examiner.  (Ex. Q, 4/29/13 Notice of Allowance).  The PTO issued the '302 patent on June 11, 2013.  (Ex. N, '302 patent).

## III.   ARGUMENT

### A.   Plaintiff's Serial Litigation Constitutes Impermissible Forum Shopping

A plaintiff engages in impermissible forum shopping when "[t]he record shows that Plaintiffs have filed numerous cases, voluntarily dismissed them in order to avoid court-imposed deadlines and unfavorable rulings, and reasserted the dismissed claims in [a different] case." *Siepel v. Bank of Am., N.A.,* 239 F.R.D. 558, 564 (E.D. Mo. 2006).  Likewise, suing an accused

infringer and then moving for voluntary dismissal without prejudice and without an adequate explanation is evidence of impermissible forum shopping. *See, e.g., Weathersby v. Gen. Motors Corp.*, No. 4:04-cv-298-P-B, 2007 WL 1484972, at *2 (N.D. Miss. May 17, 2007) ("[P]laintiff's legal maneuvering in this case, including her motion for voluntary dismissal without prejudice . . . constitutes impermissible forum shopping.") (Ex. R).   Forum shopping has become increasingly more common since "the advent of *Blonder-Tongue Laboratories*, establishing, as to patentees, the one-strike-and-you're-out doctrine . . . ."  *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977) (internal citations omitted).

Plaintiff has now sued YouTube in two courts concerning the same controversy:  whether any valid and enforceable claim of Plaintiff's related patents directed to video streaming technology cover YouTube's products and services.  By filing two complaints in two different jurisdictions involving one central dispute, Plaintiff has created unnecessary and highly disfavored piecemeal litigation that squanders both judicial and party resources.  *See Gen. Elec. Co. v. Int'l Trade Comm'n*, 692 F.3d 1218, 1220 (Fed. Cir. 2012) ("Piecemeal litigation is . . . disfavored as a matter of national policy.").   For example, YouTube has been forced to hire local and national counsel in two jurisdictions.   Further, YouTube will now expend additional resources to seek to move the Delaware case to this Court.

Worse yet, Plaintiff now seeks to voluntarily dismiss this case, without explanation, in favor of pursuing a nearly identical complaint in Delaware.  There is no excuse for this forum shopping behavior.  Massachusetts is the forum that Plaintiff first selected for this particular dispute, and it is also the more convenient forum for at least the following reasons:

- First, Plaintiff has its principal place of business in Massachusetts. (*See* Dkt. No. 1 ¶ 2).

- Second, the named inventors of the '492, '608, and '302 patents appear to reside in Massachusetts. (*See* Exs. I, J, N at cover pages).

- Third, key Google and YouTube personnel that have developed the accused YouTube products and services are located in Massachusetts. (*See, e.g.,* Ex. S, Google Boston Jobs, http://www.google.com/about/jobs/locations/boston/ (stating that Google Boston "engineers have contributed to many well-known and innovative products including . . . You Tube.")).

- Fourth, this case has been pending for nearly nine months and involves the same accused YouTube products and services and a nearly identical patent as those asserted in the Delaware case. (*Compare* Dkt. No. 1 ¶ 7 *with* Ex. E, Del. Am. Compl. ¶¶ 11, 18).

Plaintiff's inexplicable search for greener pastures constitutes inappropriate forum shopping and has resulted in piecemeal litigation. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 24 (1987) (Marshall, J., concurring) (recognizing an "odor of impermissible forum shopping which pervades this case"). Because the parties have already begun litigation in the more convenient forum, YouTube requests leave to amend its declaratory judgment counterclaims to add the '608 and '302 patents to this case.

### B.     Leave to Amend Counterclaims Is Proper Under Rule 15(d)

Federal Rule of Civil Procedure 15 provides that, on a motion to amend a pleading, the court should freely give leave to amend when justice so requires, and "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15 embodies a "liberal" amendment policy, and "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Benitez-Allende v. Alcan Aluminio do Brasil,*

*S.A.*, 857 F.2d 26, 36 (1st Cir. 1988).   This liberal standard applies equally for amending counterclaims as it does for amending complaints.   *McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*, 168 F.R.D. 94, 97 (D. Mass. 1995).   In the absence of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of amendment, a court should permit amendment.   *Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25 (1st Cir. 2007).

Federal Rule of Civil Procedure 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (2012). Rule 15(d) controls the court's determination because YouTube's amendment seeks to add two patents that issued after Plaintiff's complaint was filed in this Court.   *See, e.g., Abbott Labs v. Inverness Med. Tech.*, No. A 98-10674-GAO, 2002 WL 1906533, at *3 (D. Mass. Aug. 19, 2002) (considering a motion to amend adding two later-issued patents under Rule 15(d)) (Ex. T); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-JJT-MPT, 2010 WL 1609899, at *2-3 (D. Del. Apr. 20, 2010) (treating defendant's motion to amend counterclaims to assert a newly acquired patent as a Rule 15(d) motion) (Ex. U); *Aten Intern. Co., Ltd. v. Emine Tech. Co., Ltd.*, No. 09-843, 2010 WL 1462110, at *3-5 (C.D. Cal. Apr. 12, 2010) (analyzing a motion to amend, adding two later-issued patents, under Rule 15(d)) (Ex. V).

The purpose of Rule 15(d) is to "promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Matsushita Elec. Indus. Co. v. Cinram Int'l, Inc*., No. 01-882-SLR, 2004 WL 32922, at *1 (D. Del. Jan. 5, 2004) (Ex. W).   "Leave to file a supplemental [pleading] under Rule 15(d) rests within the court's discretion and should be freely granted if it will promote the

just disposition of the case, not cause undue prejudice or delay, and not prejudice the rights of any parties." *Id.* The court applies Rule 15(d) in a manner aimed at "securing the just, speedy, and inexpensive determination of every action." *Medeva Pharma Ltd. v. Am. Home Prods. Corp.*, 201 F.R.D. 103, 104 (D. Del. 2001).

### 1. YouTube's Amended Counterclaims Relating to the '608 and '302 Patents Promotes Efficiency

There is "substantial authority" for permitting amended pleadings when they relate to the "same technology" or "new patents containing similar claims as those in the original patent." *Cellectis S.A. v. Precision Biosciences, Inc.*, 881 F. Supp. 2d 609, 615 (D. Del. 2012) (citing *Lamoureux v. AnazaoHealth Corp.*, 669 F. Supp. 2d 227, 237 n.12 (D. Conn. 2009) (collecting cases)).

In this case, the two newly issued patents are closely related to the '492 patent. All three patents are directed to video streaming technology. The '608 patent and '492 patent share the same title, the same inventors, a common specification, and nearly identical claims. Likewise, the '302 patent is also closely related to the '492 and '608 patents. It shares a similar specification and claims.

Importantly, the '608 and '302 patents both received obviousness-type double patenting rejections over the '492 patent during prosecution. This doctrine of double patenting is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent that are not patentably distinguished from claims in a first patent. *See* Manual of Patent Examining Procedure § 804. The policy behind this doctrine is that:

> [t]he public should . . . be able to act on the assumption that upon the expiration of the patent it will be free to use not only the invention claimed in the patent but also modifications or variants which would have been obvious to those of ordinary skill in the art at the time the invention was made . . . .

*In re Zickendraht*, 319 F.2d 225, 232 (CCPA 1963) (Rich, J., concurring).   Double patenting results when the right to exclude granted by a first patent is unjustly extended by the grant of a later-issued patent or patents.   *In re Van Ornum*, 686 F.2d 937, 941 (CCPA 1982).   To overcome an unjust extension of the '492 patent rights, Plaintiff submitted terminal disclaimers to shorten the terms of both the '608 and '302 patents.   The double patenting rejections and the terminal disclaimers in the '608 and '302 patents demonstrate the closely related subject matter to the '492 patent.   Therefore, it is not surprising that Plaintiff has accused the same YouTube products/services of infringing all three patents.   (*See* Dkt. No. 1 ¶ 7, Ex. E, Del. Am. Compl. ¶¶ 11, 18).

Given the similarity of the accused technology and patents at issue, YouTube's motion to amend to add the two later-issued patents to this case would promote efficiency and judicial economy.   *See Abbott Labs.*, 2002 WL 1906533, at *3 (granting patentee leave under Rule 15(d) to file a supplemental complaint to assert an infringement claim from a patent issuing after the original complaint was filed where the newly issued patent contained similar claims to the original asserted patents and, therefore, "[a]dding the claims [of the new patent] to the present case will promote efficiency and judicial economy").   There is also no bad faith or other reason to preclude YouTube from filing amended counterclaims to add the '608 and '302 patents.   Neither the '608 nor '302 patent had been issued by the PTO when YouTube filed its answer, defenses, and counterclaims in this case.   Further, YouTube became aware of Plaintiff's infringement allegations based on those patents only after Plaintiff recently filed separate complaints asserting those patents in the District of Delaware.

Moreover, Plaintiff will not be prejudiced if the Court grants YouTube leave to amend. This ongoing dispute between Plaintiff and YouTube would be largely unaffected by the

additional counterclaims regarding the '608 and '302 patents, since this addition would add little substantive matter to the underlying claim. *See McMillan*, 168 F.R.D. at 98 (finding plaintiff would not "suffer any prejudice if the amendment is allowed" because the "defendants do not seek to add any new theories or causes of action by way of their amendment" and the counterclaim as amended "add[ed] very little, if anything, to their underlying claim."). Further, Plaintiff has ample opportunity to prepare its case given the infancy of this litigation. In sum, this amendment would not result in any prejudice to either party, nor would such amendment result in undue delay. *See New Balance Athletic Shoe, Inc. v. Puma USA, Inc*., 118 F.R.D. 17, 21 (D. Mass. 1987) (allowing a motion to amend because parties had completed "only initial discovery" and thus "should be able to prepare their defense to these new claims.").

Finally, permitting YouTube to add the '608 and '302 patents to this case would serve the precise purpose of Rule 15(d): "to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Matsushita*, 2004 WL 32922, at *1.

### 2. YouTube's Motion to Amend Conforms with the First-Filed Rule

YouTube's proposed amendment to add the '608 and '302 patents to this case also conforms with the Federal Circuit's first-to-file rule. The Federal Circuit prefers "to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy and the just and effective disposition of disputes require otherwise." *Genentech, Inc. v. Eli Lilly and Co*., 998 F.2d 931, 937 (Fed. Cir. 1993), *rev'd on other grounds*, *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995); *E.E.O.C. v. Univ. of Pa*., 850 F.2d 969, 979 (3d Cir. 1988) ("Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule"). Based on this well-recognized rule, YouTube moves to amend its counterclaims in this Court because this is the

forum where Plaintiff first brought its infringement claims against YouTube.  Further, any later-filed case involving the same controversy should be dismissed or transferred to this forum (or, at the very least, stayed pending resolution of this case) to prevent duplicative litigation. *See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 729 n.1 (5th Cir. 1985) ("In addition to outright dismissal, it sometimes may be appropriate to transfer the [second-filed] action or to stay it.").   Accordingly, YouTube plans to pursue its declaratory judgment counterclaims against Plaintiff in this Court (the first-filed case) and move to transfer the Delaware case here as well.

For these reasons, YouTube requests leave to amend its counterclaims to add the newly issued '608 and '302 patents to this case.

### C.      This Court Has Jurisdiction over YouTube's Declaratory Judgment Counterclaims

Plaintiff moved to dismiss YouTube's declaratory judgment counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1).   (*See* Dkt. No. 38-39).   Dismissal is improper, however, because the Court has subject matter jurisdiction over the counterclaims under the Declaratory Judgment Act and Federal Rule of Civil Procedure 41(A)(2).[5]  *See, e.g., Altvater v. Freeman*, 319 U.S. 359, 365-66 (1943) (dismissal of a patent infringement complaint does not require dismissal of the counterclaims).

### 1.   Principles of Declaratory Judgment Jurisdiction

Article III of the United States Constitution restricts federal judicial power to the

---

[5] Plaintiff moved to dismiss YouTube's counterclaims under Fed. R. Civ. P. 12(b)(1), which governs the presentation of defenses by motion.  (*See* Dkt. Nos. 38-30).  Plaintiff did not, however, move to dismiss its infringement claims as required under Fed. R. Civ. P. 41(a). *See, e.g., Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 3:08-CV-490-TS, 2010 WL 1753506, at *2 (N.D. Ind. Apr. 29, 2010) (Ex. X).

adjudication of "Cases" or "Controversies."  U.S. Const. art. III, § 2.  The Declaratory Judgment

Act provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be

sought."  28 U.S.C. § 2201(a).  Subject matter jurisdiction in a declaratory judgment action thus

depends on the existence of "a substantial controversy, between the parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "The controversy must be

definite and concrete, touching the legal relations of parties having adverse legal interests."

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Prasco, LLC

v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) ("[A] case or controversy must

be based on a real and immediate injury or threat of future injury that is caused by the

defendants—an objective standard that cannot be met by a purely subjective or speculative fear

of future harm.").  The Court must look to "the totality of the circumstances" in determining

whether there is an actual or imminent controversy between the parties.  *Butamax Advanced

Biofuels LLC v. Gevo, Inc.,* No. 12-1301-SLR, 2013 WL 1856308, at *2 (D. Del. May 2, 2013)

(finding "[u]nder a 'totality of the circumstances' review," that "the pattern of litigation between

the parties and the close [parent/continuation] relationship between the patents show the

existence of an actual controversy").

## 2.  An Actual Controversy Exists Regarding the '608 and '302 Patents

There is a substantial and ongoing controversy between the parties regarding the '608 and

'302 patents.  Last month, Plaintiff filed a complaint against YouTube and its parent company,

Google, in Delaware alleging infringement of the '608 and '302 patents.  Just yesterday, Plaintiff

confirmed in its motion to dismiss that it will continue to pursue its infringement claims against YouTube based on the '608 and '302 patents in the Delaware case.  (*See* Dkt. No. 39 at 2 n.1). Because Plaintiff has filed a lawsuit against YouTube asserting these patents, there is necessarily a case or controversy to support jurisdiction over YouTube's proposed counterclaims. *See Cardinal Chem. Co. v. Morton Int'l Inc.*, 508 U.S. 82, 96 (1993) ("[i]f . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction" at that time) (emphasis original).

Moreover, the similarity of the '608 and '302 patents to the patent-in-suit also creates declaratory judgment jurisdiction over YouTube's Amended Counterclaims.  (*See* Dkt. 39 at 2 n.1 (acknowledging that the Delaware case involves "patents that are also directed to sharing streaming video files and associated advertisements.")).  Indeed, Plaintiff has demonstrated through this infringement suit asserting the '492 patent that it has a "willingness to protect [its video streaming] technology."  *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1159 (Fed. Cir. 2006).  Because Plaintiff sued YouTube on the '492, '608, and '302 patents, and there is substantial similarity in the claimed subject matter among all three patents, there is an actual controversy regarding the '608 and '302 patents in this case.  *See, e.g., Butamax Advanced Biofuels,* 2013 WL 1856308, at *2 (finding jurisdiction over counterclaims based on a continuation patent that has been terminally disclaimed over the parent patent, based on the "substantial similarities in the claimed subject matter") (Ex. Y); *Tesco Corp. v. Weatherford Int'l, Inc.*, No. H-08-2531, 2009 WL 497134, at *4-5 (S.D. Tex. Feb. 26, 2009) ("[W]hile Plaintiff sued under the [parent] patent and discovery is in its infancy, the similarity of the two patents compels the result that the court should retain jurisdiction over the declaratory judgment action for the [continuation] Patent.") (Ex. Z); *cf. Vision Biosystems (USA) Trading, Inc. v. Ventana*

*Med. Sys.*, No. 03-10391-GAO, 2004 U.S. Dist. LEXIS 21449, at *34 (D. Mass. Sept. 30, 2004)

(no declaratory judgment jurisdiction over a related patent because PTO proceedings "cast[ed]

some doubt" on the validity of the patent, and plaintiff had not sued on the related patent in a

different jurisdiction) (Ex. AA).

### 3.   An Actual Controversy *Still* Exists Regarding The '492 Patent

Federal Rule of Civil Procedure 41(A)(2) states that:

> an action may be dismissed at the plaintiff's request only by court order, on terms
> that the court considers proper.  If a defendant has pleaded a counterclaim before
> being served with the plaintiff's motion to dismiss, the action may be dismissed
> over the defendant's objection only if the counterclaim can remain pending for
> independent adjudication.

Pursuant to Rule 41(A)(2), YouTube's counterclaims concerning the '492 patent cannot

be dismissed because there is independent declaratory judgment jurisdiction of those

counterclaims.  A case or controversy necessarily existed when YouTube's original counterclaims

were filed because Plaintiff had already sued YouTube for patent infringement of the '492 patent

in this Court.   The Court has maintained declaratory judgment jurisdiction from the very

beginning of this case and will continue to maintain jurisdiction over YouTube's counterclaims,

even if the Court dismisses Plaintiff's infringement claims based on the '492 patent.

There remains an ongoing controversy between the parties concerning the '492 patent.

YouTube is presently engaged in activity that places it at risk for a claim of infringement by

Plaintiff at a later time.  For example, YouTube is continuing to provide the accused YouTube

products and services in the United States.   Accordingly, there is a substantial controversy

between the parties of sufficient immediacy and reality to warrant a declaratory judgment over

YouTube's counterclaims for non-infringement, invalidity, and unenforceability of

the '492 patent.   *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008)

(a party may obtain a declaratory judgment where it is engaged in present activity that could

constitute infringement or has taken concrete steps with the intent to conduct such activity); *Arteris S.A.S. v. Sonics, Inc*., No. 12-0434 SBA, 2013 WL 3052903, at *5-6 (N.D. Cal. June 17, 2013) (finding a substantial controversy between the parties to warrant a declaratory judgment on its counterclaims for non-infringement and invalidity because defendant was "presently engaged in activity that places it at risk of a claim for infringement" by plaintiff at a later date) (Ex. AB).

Furthermore, Plaintiff's bare-bones covenant not to sue is *not* sufficient to resolve the ongoing controversy between the parties.  *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., 556 F.3d 1294, 1297 (Fed. Cir. 2009) (holding "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant.").  Plaintiff's covenant not to sue addresses its claims only with respect to YouTube and the '492 patent.  Since the covenant is limited to YouTube and the '492 patent, it does not resolve the entire controversy between the parties with respect to the Delaware litigation.  In addition, the covenant does not expressly preclude the prospect of future litigation with respect to closely related products or patents. *See Harris Corp. v. Fed. Express Corp*., 670 F. Supp. 2d 1306, 1310-11 (M.D. Fla. 2009) (retaining jurisdiction over invalidity counterclaims because the covenant was "insufficiently broad to preclude the prospect of future litigation over [the accused infringer's] past and present uses of the system"); *cf. Transwitch Corp. v. Galazar Networks, Inc*., 377 F. Supp. 2d 284, 293-94 (D. Mass. 2005) (covenant not to sue was sufficient because it "encompasse[d] all of the accused products in this lawsuit").  Accordingly, Plaintiff's conclusory allegation that its covenant "extinguished any possible case or controversy between the parties" is unsupported. (*See* Dkt. No. 39 at 4).

Plaintiff relies on cases where a patent holder's covenant was sufficient to divest jurisdiction over declaratory judgment claims. (*See* Dkt. No. 39 at 4-5). In those cases, the patent holder did not initiate the lawsuit and provided a covenant not to sue for past and future infringement. *See, e.g., Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010) (patent holder's covenant not to sue resolved the entire dispute between the parties because patent holder never brought suit against the alleged infringer and promised never to sue in the future); *Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253 (D.C. Cir. 2006) (same); *Biogen, Inc. v. Amgen, Inc.,* 913 F. Supp. 35, 40 (D. Mass. 1996) (same). This authority is inapposite, of course, because Plaintiff has sued YouTube two times in separate jurisdictions.

Plaintiff's covenant not to sue cannot overcome its litigious course of conduct with respect to YouTube. Plaintiff has demonstrated a preparedness and willingness to enforce its related patent rights directed to its video streaming technology against YouTube. This conduct puts YouTube "in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Sandisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1381 (Fed. Cir. 2007); *see also Revolution Eyewear*, 556 F.3d at 1297 (retaining jurisdiction over invalidity counterclaims despite a covenant not to sue because patentee "ha[d] engaged in a course of conduct that show[ed] a preparedness and willingness to enforce its patent rights"); *BIS Advanced Software Sys., Ltd. v. Red Bend Software, Inc.*, No. 04-11960-RWZ, 2006 WL 753246, at *2 (D. Mass. Mar. 22, 2006) (granting plaintiff's motion to dismiss its own infringement claims with prejudice, but retaining jurisdiction over the defendant's counterclaims of invalidity) (Ex. AC). Thus, Plaintiff's motion to dismiss, even coupled with its covenant not to sue, does not warrant dismissal of YouTube's counterclaims relating to invalidity and unenforceability of the '492 patent.

### D.    Google's Joinder as a Counterclaim-Plaintiff Promotes Efficiency

In addition to adding declaratory judgment counterclaims for the '608 and '302 patents, YouTube also requests leave to join Google as a Counterclaim-Plaintiff in this case. Google and YouTube were both named as defendants in the Delaware case, and, therefore, Google also seeks a declaratory judgment of non-infringement, invalidity, and unenforceability of the '608 and '302 patents. [6]

Federal Rule of Civil Procedure 13(h) provides that a party that asserts a counterclaim may invoke Federal Rule of Civil Procedure 20 to join additional parties. Rule 20, in turn, allows a party to join another party as a plaintiff if "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also Bowlby v. Carter Mfg. Corp.*, 138 F. Supp. 2d 182, 189 (D. Mass. 2001) (noting that the defendant filed a motion to add an additional counterclaim plaintiff under Rule 20(a)). The purpose of Rule 20 is to "promote the efficient administration of the courts." *Smith v. Oelenschlager*, 845 F.2d 1182, 1183 (3d Cir. 1988).

YouTube seeks to join Google as a Counterclaim-Plaintiff because there are questions of law and fact common to both YouTube and Google that will arise in this case. For example, Plaintiff's infringement claims based on the '608 and '302 patents do not distinguish between Google and YouTube with respect to the allegedly infringing activities. (Ex. E, Del. Am. Compl. ¶¶ 11-13, 18-20). Furthermore, Google's counterclaims are identical to YouTube's counterclaims with respect to the '608 and '302 patents—*i.e.*, they both seek a declaratory judgment of non-infringement, invalidity, and unenforceability of those patents. Finally, allowing Google to join

---

[6] Since Plaintiff also named Google as a defendant in the Delaware case, this Court has declaratory judgment jurisdiction over Google's counterclaims regarding the '608 and '302 patents for the same reasons that it has jurisdiction over YouTube's counterclaims. *See* Sec. C.2, *supra*.

in YouTube's counterclaims would promote efficient resolution of the dispute between the parties because the Court would be the sole arbitrator of those issues (Google and YouTube will move to transfer the Delaware case to this Court).  Accordingly, YouTube respectfully requests leave to join Google as a Counterclaim-Plaintiff.

### E.       YouTube Will Consider Seeking Costs If This Case Is Dismissed

By initiating this action, Plaintiff has caused YouTube to expend considerable resources investigating the allegations and preparing its defense.  Now Plaintiff, with no legitimate explanation, wishes to back out of this litigation.  In the event that Plaintiff succeeds in voluntarily dismissing this case over YouTube's objection, YouTube will consider seeking costs from Plaintiff under Federal Rule of Civil Procedure 41(d).  Rule 41(d) permits a court to "order the plaintiff to pay all or part of the costs of [a] previous action" when a plaintiff "who previously dismissed an action in any court files an action based on or including the same claim against the same defendant."  Because Plaintiff has filed a duplicative complaint in Delaware concerning the same controversy, Plaintiff has impermissibly "file[d] an action based on or including the same claim against the same defendant."  *See* Fed. R. Civ. P. 41(d). Accordingly, Rule 41(d) would apply in this situation, and YouTube will consider seeking costs from Plaintiff should this case be dismissed at Plaintiff's request.

## IV.    CONCLUSION

Plaintiff's request to dismiss this lawsuit in favor of a later-filed, but substantially similar, lawsuit in a different forum is blatant forum shopping and should not be rewarded.  For this reason and the reasons stated above, YouTube respectfully requests that it be permitted to amend its declaratory judgment counterclaims to include the '608 and '302 patents in its First Amended Answer, Defenses, and Counterclaims (attached as Exhibit A).

Dated:   July 2, 2013

Respectfully submitted,

*/s/ Cono A. Carrano*
Cono A. Carrano
ccarrano@akingump.com
David Vondle
dvondle@akingump.com
Emily C. Johnson (*pro hac vice pending*)
johnsone@akingump.com
Romeao Jennings
rjennings@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(T) 202.887.4000
(F) 202.887.4288

Dianne Elderkin
delderkin@akingump.com
Julie Goldemberg
jgoldemberg@akingump.com
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
(T) 215.965.1200
(F) 215.965.1210

J. Patrick Kennedy, BBO# 565778
pkennedy@bulkley.com
Bulkley, Richardson and Gelinas, LLP
125 High Street
Oliver Street Tower, 16th Floor
Boston, MA 02110
(617) 368-2500

**ATTORNEYS FOR DEFENDANT
YOUTUBE, LLC**

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Cono A. Carrano, hereby certify that I conferred with counsel for the Plaintiff via telephone on July 1, 2013 in an attempt in good faith to resolve or narrow the issue presented in this motion.  The Plaintiff did not consent to the filing of the First Amended Answer, Affirmative Defenses, and Counterclaims.

*/s/ Cono A. Carrano*
Cono A. Carrano


## CERTIFICATE OF SERVICE

I, David Vondle, hereby certify that a true and correct copy of the above document was served upon the attorney of record for each other party via this Court's CM/ECF system on July 2, 2013.

*/s/ David Vondle*
David Vondle